IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 3:19-CR-151-TAV-DCP |
| | ) | |
| DEMETRIUS D. BIBBS, and | ) | |
| CAMERON A. BILLIPS, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Judge as may be appropriate. On July 23, 2019, law enforcement applied for and obtained a search warrant to search a duplex at 510 Gillespie Road, Chattanooga, Tennessee. Upon their entry into the duplex to execute the search warrant on July 25, 2019, the executing officers were involved in a shooting with Cameron Billips. Defendant Bibbs was located in the back bedroom of the residence. In order to secure evidence relating to the shooting, Detective Sergeant Henry Ritter applied for and obtained a second search warrant for 510 Gillespie Road on the same date. Defendant Bibbs was transported to the Hamilton County Sheriff's Office, where he was interviewed by officers following advice of the *Miranda* warnings. Defendant Bibbs seeks the suppression of items seized pursuant to both search warrants, arguing they were issued in violation of his rights under the Fourth Amendment. Defendant Billips seeks to join in this motion. Defendant Bibbs also seeks the suppression of his statement, asserting it was obtained in violation of his Fifth Amendment rights.

1

For the reasons detailed below and after reviewing the parties' arguments and exhibits and the relevant legal authorities, the Court finds that the supporting affidavit provides probable cause for the issuance of the first search warrant for 510 Gillespie Road. The Court finds that evidence gained during the execution of the second search warrant is not "fruit of the poisonous tree." The Court also finds that Defendant Bibbs knowingly and voluntarily participated in the interview at the police station.[1] Accordingly, finding no constitutional violations, the Court recommends that the Defendant Bibbs's motions to suppress evidence and his statement [Docs. 222 & 223] be denied. The Court also recommends that, to the extent that Defendant Billips has a legitimate expectation of privacy in 510 Gillespie Road, the motion to suppress be denied as to him.

## I.       BACKGROUND

Defendants Bibbs and Billips are charged [Doc. 243] with conspiring to possess and distribute controlled substances from July 15, 2018, to November 22, 2019 (Count One) and possession of firearms in furtherance of drug trafficking during this same period (Count Two). Defendant Bibbs is also charged with aiding and abetting another in the possession of heroin with intent to distribute on July 25, 2019 (Count Twelve); aiding and abetting another in the possession and brandishing of a firearm in furtherance of the drug trafficking alleged in Count Twelve (Count Thirteen); and being a felon in possession of a firearm on July 25, 2019 (Count Fifteen). Defendant Billips is additionally charged with the possession of heroin with intent to distribute on June 30, 2019 (Count Ten) and the possession of fentanyl with the intent to distribute on that same date

---

[1] The parties agree that the Government will not use the first July 25, 2019 interview of Defendant Bibbs in the patrol car on the scene of the search in its case-in-chief at trial.

(Count Eleven).  As stated above, the instant motions center on the execution of two search warrants at 510 Gillespie Road, Chattanooga, Tennessee, on July 25, 2019.[2]

On July 23, 2019, Investigator Headden of the Chattanooga Police Department ("CPD") provided an affidavit [Doc. 222-1] in support of his application for a search warrant for a duplex at 510 Gillespie Road, Chattanooga, Tennessee.  Investigator Headden's affidavit relates that a confidential informant, who reliably provided information in the past, told Investigator Headden that Demetrius Bibbs deals heroin and marijuana from his residence at 510 Gillespie Road [Doc. 222-1, p.2, ¶¶3 & 9].  The informant states that within the past seventy-two hours, he or she was in the residence and observed heroin and marijuana in the possession and control of Bibbs [Doc. 222-1, p.2, ¶4].  Investigator Headden states that he was able to corroborate the following information from the informant:  That gang members are associated with this address [Doc. 222-1, pp.2-3, ¶5], that Bibbs was previously incarcerated in federal prison [Doc. 222-1, p.3, ¶6], and that a shooting occurred at the residence on July 21, 2019 [Doc. 222-1, p.3, ¶7].  Based upon this information, a Hamilton County General Sessions Judge issued a search warrant for 510 Gillespie Road, authorizing law enforcement to seize Demetrius Bibbs and evidence of drug trafficking, to include heroin and marijuana [Doc. 222-1, p.4-6].

According to the affidavit of Detective Sergeant Henry Ritter of the Hamilton County Sheriff's Office ("HCSO"), officers from the CPD Special Weapons and Tactics ("SWAT") team executed a search warrant at 510 Gillespie Road at 6:17 a.m., on July 25, 2019 [Doc. 222-2, pp.1-2, ¶¶3 & 7(a)].  CPD officers, wearing identifying clothing, announced their presence before and as they entered the residence [Doc. 222-2, p.2, ¶7(b)].  Upon entry, the officers encountered

---

[2] The background information is taken from the search warrant affidavits [Doc. 222-1] and other exhibits.  No testimony was presented at the November 20, 2020 hearing.

Cameron Billips in the front room [Doc. 222-2, p.3, ¶7(c)]. Billips "had a gun in his hand and threatened Officers at which time SWAT members fired at Bill[i]ps striking him in the chest" [Doc. 222-2, p.3, ¶7(d)]. Billips was taken to the hospital with non-life-threatening injuries [Doc. 222-2, p.3, ¶7(e)].

During the search of the duplex, Bibbs was detained in a police car. According to the Government's brief, officers questioned Bibbs for eight minutes about the shooting [Doc. 231, p.85].[3] Bibbs was not advised of the *Miranda* warnings before being questioned [Doc. 231, p.85]. The Government does not seek to use this statement in its case-in-chief at trial.

At 10:45 a.m., on July 25, 2019, Detective Ritter sought a second search warrant for 510 Gillespie Road to seize evidence of aggravated assault and attempted homicide in relation to Billips's brandishing a gun at the officers executing the first search warrant [Doc. 222-2, pp.1-3]. A different Hamilton County General Sessions Court Judge issued the second search warrant for 510 Gillespie Road, at 11:15 a.m., on July 25, 2019 [Doc. 222-2, pp.4-5].

Defendant Bibbs was transported to the Hamilton County Sheriff's Department, where he was interviewed by HCSO officers at 10:53 p.m., on July 25, 2019 [Doc. 231, pp.85-86]. An officer advised Bibbs of the *Miranda* warnings before asking any questions [Doc. 231, pp.86-87; Doc. 233, Exh. 9A, p.1]. The officers questioned Bibbs for approximately eleven minutes about drugs and a gun found at 510 Gillespie Road [Doc. 231, p.86].

---

[3] In his reply brief, the Defendant states that the first statement occurred at approximately 8:00 p.m., while he was handcuffed and seated in the back of a police car [Doc. 299, p.1]. The Government contends that the first statement occurred at 8:02 a.m., while Bibbs was seated in a police car following the shooting inside the residence [Doc. 231, p.85]. The Court finds Defendant Bibbs's second statement to HCSO officers supports a finding that the first statement in the police car occurred at 8:00 a.m., rather than 8:00 p.m., because Defendant Bibbs comments that he has been sitting "in here" (i.e., at the Sheriff's Department) all day [Doc. 233, Exh. 9A, p.1].

4

Defendant Bibbs filed motions challenging both search warrants and both statements. The parties appeared before the undersigned on November 20, 2020, for a hearing on Defendant Bibbs's pretrial motions.[4] Assistant United States Attorney David P. Lewen appeared on behalf of the Government. Attorney Randall E. Reagan represented the Defendant, who was also present. The Court heard the arguments of the parties. The Government presented a video recording [Doc. 231, Exh. 9][5] and a transcript [Doc. 233, Exh. 9A] of the Defendant's second statement. Mr. Reagan stipulated to these exhibits. Mr. Reagan was permitted to file a post-hearing reply brief on the issue of implied waiver with respect to the second statement. The Defendant filed his reply [Doc. 299] on November 25, 2020. The Court took the motions under advisement at that time.

On February 12, 2021, Defendant Billips filed a Motion to Adopt Co-defendants' Motions [Doc. 339], seeking to adopt several motions, including Defendant Bibbs's Motion to Suppress Evidence Obtained from the Searches of 510 Gillespie Road [Doc. 222]. Defendant Billips argues that he is similarly situated to Defendant Bibbs and that he agrees with the arguments made by Defendant Bibbs in support of the motion to suppress. On February 26, 2021, the Government responded [Doc. 348] to Defendant Billips's motion to join in Defendant Bibbs's suppression motion, relying on its previous response, which it excerpted and attached [Doc. 348-1, Exh. A].

## II. POSITIONS OF THE PARTIES

Defendant Bibbs asks the Court to suppress all evidence resulting from the two searches of 510 Gillespie Road [Doc. 222]. He argues that Investigator Headden's affidavit did not provide probable cause to search the residence for three reasons: (1) The affidavit does not show that the

---

[4] In addition to his two suppression motions [Docs. 222 & 223], Defendant Bibbs filed six additional pretrial motions [Docs. 214-218 & 220], which will be addressed separately.

[5] The Government provided a flash drive containing the video recording to the Court after the hearing.

confidential informant was reliable, (2) the affidavit fails to provide a nexus between the alleged criminal activity and the duplex, and (3) the information in the affidavit is stale. Defendant Bibbs argues that the second search warrant for 510 Gillespie Road relies on information obtained during the execution of the first search warrant and, thus, any evidence seized during the execution of the second search warrant must be suppressed as fruit of the poisonous tree. Defendant Billips asks to adopt these arguments as his own [Doc. 339].

The Government responds that the two search warrants for 510 Gillespie Road were issued in full compliance with the Fourth Amendment [Doc. 231]. It asserts that Investigator Headden's affidavit demonstrates non-stale probable cause, the reliability of the informant, and a nexus between the evidence sought and the place to be searched. The Government also argues that the second search warrant is based upon separate information, rather than any evidence seized during the execution of the first search warrant, and, thus, is not the "fruit" of the first search warrant. Finally, the Government contends that even if the Court finds the first search warrant lacks probable cause, none of the evidence should be excluded because the executing officers reasonably relied on the search warrants in good faith.

Defendant Bibbs also asks the Court to suppress his statement made at the Hamilton County Sheriff's Office ("the second statement") and all evidence obtained therefrom, because the statement was not voluntarily given [Docs. 223 & 299].[6] The parties agree that the officer advised Defendant Bibbs of the *Miranda* warnings before questioning him. However, the Defendant argues that he did not expressly or impliedly waive his *Miranda* rights before the officers

---

[6] In his motion, Defendant Bibbs also challenges the statement he gave officers while detained in a patrol car outside of his residence [Doc. 223]. However, at the November 20, 2020 hearing, the parties agreed that this statement was no longer at issue, because the Government will not use this statement in its case-in-chief.

questioned him. He contends that his requests for information and expressions of concern for Billips do not constitute an implied waiver of his rights.

The Government argues that Defendant Bibbs's second statement was removed from any taint stemming from the first, unwarned statement and was voluntarily given [Doc. 231]. It contends, that the second statement occurred ten hours after the first interview, in a different location, with different officers, and focused on drug trafficking, whereas the first statement concerned the shooting. The Government also maintains that the officers gave the Defendant the *Miranda* warnings before questioning him in the second interview. It contends that Defendant Bibbs's behavior indicated he understood his rights and knowingly and intelligently waived them by implication, before answering the officers' questions.

## III. ANALYSIS

The Fourth Amendment protects the right to be free from unreasonable searches and seizures. In this respect, a judge shall not issue a warrant for the search of a person, home, or personal property except upon a finding of "probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Fifth Amendment protects the right not to incriminate oneself. U.S. Const. amend V. Defendant Bibbs argues that his Fourth Amendment rights were violated by the issuance of two search warrants for his residence on July 25, 2019. He asks the Court to suppress all evidence seized from his residence during both searches. He also contends that his Fifth Amendment rights were violated when officers questioned him, although he did not expressly or impliedly waive his rights. The Court examines each of these issues in turn and additionally addresses whether Defendant Billips has a legitimate expectation of privacy in the residence, such that he can now join in the suppression motion.

7

## A. Search Warrants

A search warrant issued in compliance with the Fourth Amendment must be based on "particularized facts" that demonstrate "'a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (quoting *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)). In the instant case, Defendant Bibbs contends that although law enforcement searched his residence pursuant to a search warrant, the search warrant was not based upon probable cause. An issuing judge's determination that probable cause exists is entitled to "'great deference.'" *United States v. Allen*, 211 F.3d 970, 973 (6th Cir.) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)), *cert. denied* 531 U.S. 907 (2000). This deferential standard promotes the preference for the use of search warrants as opposed to warrantless searches. *Id.* "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.

The "duty of a reviewing court is simply to ensure that the magistrate [judge] had a substantial basis for concluding that probable cause existed." *Id.* at 238-39. In making this determination, the Court considers only the information that was before the issuing judge–in other words, only what is contained within the four corners of the supporting affidavit. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir.), *cert. denied,* 560 U.S. 959 (2010); *see also Whiteley v. Warden*, 401 U.S. 560, 565 n.8 (1971). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* at 244 n.13. Thus, the Supreme Court has observed that "probable cause is a flexible, common-sense standard," causing a person "of reasonable caution" to believe that the items are evidence of a crime. *Texas v. Brown*,

8

460 U.S. 730, 742 (1983). In other words, probable cause is "reasonable grounds for belief supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). Whether probable cause to issue a search warrant exists is evaluated by looking at the totality of the circumstances. *Gates*, 462 U.S. at 238. With these principles in mind, the Court turns to the search warrants in this case.

*(1) First Search Warrant for 510 Gillespie Road*

Regarding the first search warrant, Defendant Bibbs brings a three-fold challenge to the Hamilton County General Session Judge's probable cause finding: First, he argues that the affidavit of Investigator Headden fails to provide probable cause, because it does not demonstrate that the confidential informant is reliable. Second, Defendant Bibbs contends that Investigator Headden's affidavit fails to provide a nexus between the alleged criminal activity and his residence. Third, Defendant Bibbs contends the information in the affidavit is stale.

If probable cause to issue a search warrant is gained from information provided by a confidential source, the issuing judge must have a basis for finding that the source is reliable or credible and was in a position to know the information provided. *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009); *see also Gates*, 462 U.S. at 233 (holding that a confidential informant's reliability and basis of knowledge are "relevant considerations in the totality-of-the-circumstances analysis"); *Allen*, 211 F.3d at 972-73. An informant's veracity or reliability and basis of knowledge are not rigid categories. *Id.* Instead, deficiencies in one aspect can be made up by a strong showing in the other. *Gates*, 462 U.S. at 232-33; *Allen*, 211 F.2d at 981.

Sixth Circuit "precedent 'clearly establishes that the affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable.'" *United States v. Brown*, 732 F.3d 569, 574 (6th Cir.) (quoting *United States v. Greene*, 250 F.3d 471, 480

9

(6th Cir. 2001)), *cert. denied* 571 U.S. 1000 (2013).  In his affidavit, Investigator Headden states that the confidential informant has worked with Investigator Harrison for the past year and has provided law enforcement information leading to three arrests for violations of narcotics laws [Doc. 222-1, p.3, ¶¶8-9].  At the motion hearing, Mr. Reagan argued that this information is insufficient to show the informant's reliability because the affidavit does not state whether these arrests resulted in convictions or acquittals.  In *Greene*, our appellate court upheld the reliability of an informant whose prior assistance to law enforcement resulted in multiple arrests.  250 F.3d at 480.  Thus, Investigator Headden's affidavit provided sufficient information for the judge to find the informant to be reliable.

Defendant Bibbs also faults law enforcement's corroboration of the informant's information.  First, the Court observes that additional corroboration is not required when the affidavit contains the personal observations of a confidential informant, known to the affiant to be reliable.  *Brown*, 732 F.3d at 574 (affirming the probable cause based upon a known and reliable informant's observations of the defendant selling drugs at his home).  Here, like in *Brown*, the affidavit states that the informant told Investigator Headden that Bibbs lived at 510 Gillespie Road and that Bibbs "was dealing illegal narcotics, specifically HEROIN AND MARIJUANA from this residence" [Doc. 222-1, p.2, ¶3].  The informant reported *seeing* Bibbs in possession of heroin and marijuana at the residence within the last seventy-two hours [Doc. 222-1, p.2, ¶4].  Thus, further police corroboration was not necessary.

Nevertheless, the Court finds that Investigator Headden's affidavit contains some corroboration of the informant's statement that 510 Gillespie was associated with gang members: Five days earlier, Investigator Harrison saw numerous vehicles and six people "hanging out" in front of 510 Gillespie Road [Doc. 222-1, p.2, ¶5].  Also, Investigator Headden corroborated the

informant's statement that someone shot at the residence two days earlier [Doc. 222-1, p.2, ¶7]. Finally, Investigator Headden corroborated the informant's information that Bibbs had served time in federal prison [Doc. 222-1, p.2, ¶6]. The Defendant discounts this corroboration as unrelated to the reported crimes. However, police do not necessarily have to corroborate the criminal conduct observed by the informant; instead, corroboration of un-incriminating facts can be sufficient to establish probable cause. *Gates*, 462 U.S. at 243-44. "It is enough, for purposes of assessing probable cause, that 'corroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay.'" *Id.* at 244-45 (quoting *Jones v. United States*, 362 U.S. 257, 269, 271 (1960)). In the instant case, law enforcement corroborated the informant's knowledge of Bibbs's history of a criminal conviction and as being a convicted felon and of the residence being associated with a recent shooting. This corroboration provided an additional basis for accrediting the informant's statements regarding Bibbs's dealing drugs from the residence.

Defendant Bibbs also argues that Investigator Headden's affidavit fails to provide a nexus between the alleged criminal activity and the location to be searched. He contends that the affidavit contains no information that the informant purchased drugs at the residence, nor were any controlled buys conducted there. He also asserts that law enforcement failed to corroborate that this was Bibbs's residence.

"To justify a search, the circumstances must indicate why evidence of illegal activity will be found 'in a particular place.'" *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir.) (en banc), *cert. denied*, 543 U.S. 851 (2004). In other words, probable cause requires a "'nexus between the place to be searched and the evidence sought.'" *Id.* (quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998)). "The connection between the residence and the

evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'" *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (quoting *Carpenter*, 360 F.3d at 595). Assessing whether an affidavit establishes a nexus turns upon the facts of a particular case and requires examination of the totality of the circumstances. *Id.*

Here, the affidavit unquestionably provides a nexus between 510 Gillespie Road and drug trafficking. The informant told the affiant that Bibbs lives at 510 Gillespie Road, that Bibbs sells drugs from the residence, and that he or she saw Bibbs with drugs at the residence within the past seventy-two hours. The Defendant argues that the affidavit does not contain numerous salient facts; however, the Court evaluates the sufficiency of probable cause based upon the information contained within the affidavit, not what it could have contained. *Brown*, 732 F.3d at 573-74. The information from the informant provides a specific and concrete connection between 510 Gillespie Road and drug trafficking. Such provides a substantial basis for finding probable cause.

Finally, Defendant Bibbs contends that the information in the affidavit is stale. At the motion hearing, Mr. Reagan argued that the affidavit does not relate when or how often the informant saw the Defendant dealing drugs from 510 Gillespie Road. A "warrant is stale if the probable cause, while sufficient at some point in the past, is now insufficient as to evidence at a specific location." *United States v. Abboud*, 438 F.3d 554, 572 (6th Cir.) (internal quotations omitted), *cert. denied*, 549 U.S. 976 (2006). Our appellate court has identified four factors that aid in assessing whether information in an affidavit supporting a search warrant is stale:

> (1) "the character of the crime (chance encounter in the night or regenerating conspiracy?),"
>
> (2) "the criminal (nomadic or entrenched?),"
>
> (3) "the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?)," [and]

(4) "the place to be searched (mere criminal forum of convenience or secure operational base?)."

*Id.* at 573-74 (quoting *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998), *cert. denied*, 525 U.S. 1086 (1999)). Application of these factors in the instant case reveals that the information in the affidavit was not stale.

The first factor examines the nature of the crime. Here, the affidavit suggests that the crime—drug trafficking—is ongoing, rather than a single encounter. The informant told law enforcement that Bibbs was dealing heroin and marijuana from the residence and last had these substances at the residence three days earlier [Doc. 222-1, p.2, ¶¶3&4]. The second factor focuses on whether the suspect is "nomadic" or "entrenched." In Investigator Headden's affidavit, the informant states the Defendant is living at 510 Gillespie Road [Doc. 222-1, p.2, ¶3]. This suggests that Bibbs is "entrenched," rather than "nomadic."

At first blush, the third factor seemingly suggests the information is stale, because the primary contraband to be seized, illegal drugs, is perishable and easily transferrable. However, our appellate court has upheld the sufficiency of probable cause for illegal drugs last seen at the location to be searched within seventy-two hours of the issuance of the search warrant. *United States v. Bryant*, 145 F. App'x 95, 98 (6th Cir.), *cert. denied*, 546 U.S. 953 (2005). In *Bryant*, the court found the affidavit was not subject to staleness, when the informant told officers that he had seen illegal drugs inside the defendant's apartment within the last seventy-two hours. *Id.* The court observed that "evidence of ongoing criminal activity—like the drug-trafficking in this case—'will generally defeat a claim of staleness.'" *Id.* (quoting *Greene*, 250 F.3d at 481). In the instant case, the information from the informant also suggests that Bibbs's drug trafficking was ongoing. Accordingly, the third factor does not indicate the informant's information is stale.

13

Finally, with regard to the fourth factor, the location to be searched is the Defendant's residence, which is more akin to a "secure operational base," that a "forum of convenience." To be sure, Investigator Headden's affidavit contains limited information on each of these factors. However, considering the totality of the circumstances, particularly the information that the informant saw the Defendant at the residence with illegal drugs in the last three days, the Court finds that the information in the affidavit is not stale.

In summary, the Court finds that Investigator Headden's affidavit reveals the informant was reliable, demonstrates a nexus between the crime alleged and the location to be searched, and states information that is sufficiently fresh to provide a substantial basis for the issuing judge to find probable cause. Thus, the affidavit provides probable cause for the issuance of the first search warrant for 510 Gillespie Road.

### (2) Second Search Warrant for 510 Gillespie Road

Defendant Bibbs does not challenge the sufficiency of probable cause for the second search warrant. Instead, he argues that the second search warrant is the "fruit" of the first search warrant and, therefore, must also be suppressed. When a search is deemed unlawful, the government may not benefit from the physical items seized in that search or from any evidence otherwise derived from the search, such as an individual's statement or "matters observed during an unlawful invasion." *Wong Sun v. United States*, 371 U.S. 471, 485-86 (1963). Such wrongfully gained evidence or observation is the "fruit" of the "official illegality" and cannot be used unless knowledge of the evidence or observations can be gained from an independent source. *Id.* This "fruit of the poisonous tree doctrine," as it has come to be known, "bars the admissibility of evidence which police derivatively obtain from an unconstitutional search or seizure." *United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008). In the instant case, the Court does not find

14

the officers' observation of Defendant Billips's actions upon entering the duplex to be the fruit of an illegal entry, because, as discussed above, the Court finds law enforcement was authorized to enter the residence by the first search warrant, which was supported by probable cause.[7] Accordingly, the evidence seized pursuant to the second search warrant is not subject to suppression.

### (3) Exclusionary Rule and Good Faith Exception

The Government argues that if the Court finds Investigator Headden's affidavit fails to provide probable cause, the Court should not suppress the evidence seized in the execution of the two search warrants, because law enforcement searched the residence in good faith reliance on the search warrants. Although the Supreme Court recognizes a good faith exception to the exclusionary rule, *see United States v. Herring*, 555 U.S. 135, 139-40 (2009) and *United States v.*

---

[7] In its response, the Government argues that probable cause for the second search warrant is not the fruit of the first search warrant but, instead, derives from a separate source, i.e., the SWAT team's observations as the victims of a separate crime [Doc. 231, p.84]. In order to find evidence or information gained by an illegal search or seizure is sufficiently attenuated to be used, the Court must assess whether that evidence was gained through the "'exploitation of the illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Pearce*, 531 F.3d at 381 (quoting *Hudson v. Michigan*, 547 U.S. 586, 592 (2006)). Here, the SWAT team observed Defendant Billips brandishing a gun immediately upon entry of 510 Gillespie Road, pursuant to the first search warrant. The SWAT team's observations appear to be directly related to, not attenuated from, the use of the first search warrant. However, other circuits recognize a "new crime exception" to the exclusionary rule, holding that a defendant's assault of an officer, upon the officer's illegal stop or illegal entry into the defendant's residence, is sufficiently attenuated from the illegal police action. *See, e.g., United States v. Sprinkle*, 106 F.3d 613, 619 (4th Cir. 1997); *United States v. Dawdy*, 46 F.3d 1427, 1431 (8th Cir.), *cert. denied*, 516 U.S. 872 (1995); *United States v. Pryor*, 32 F.3d 1192, 1196 (7th Cir. 1994); *United States v. Waupekenay*, 973 F.2d 1533, 1537 (10th Cir. 1992); *United States v. Sheppard*, 901 F.2d 1230, 1235 (5th Cir. 1990); *United States v. Mitchell*, 812 F.2d 1250, 1254–55 (9th Cir. 1987); *United States v. King*, 724 F.2d 253, 256 (1st Cir. 1984); *United States v. Bailey*, 691 F.2d 1009, 1013-14 (11th Cir.), *cert. denied*, 461 U.S. 933 (1983); *see also State v. Brocuglio*, 826 A.2d 145, 151-52 (Conn. 2003) (collecting cases); *State v. Abernathy*, 159 S.W.3d 601, 604-05 (Tenn. Crim. App. 2004). The Court need not venture any farther down this analytical rabbit hole, because, as discussed above, the first search warrant was valid and, thus, there is no taint to be attenuated.

*Leon*, 468 U.S. 897, 909 (1984), the Court need not analyze whether such exception applies in the instant case. The Court has found no Fourth Amendment violation, so neither the exclusionary rule, nor the good faith exception, need be applied in this case.

### (4) Defendant Billips's Standing

Finally, the Court examines briefly whether Defendant Billips has a legitimate expectation of privacy in 510 Gillespie Road, such that he may join in Defendant Bibbs's motion to suppress the evidence seized as a result of the execution of the search warrants. *See United States v. Ellis*, 125 F. App'x 691, 695 (6th Cir. 2005) (holding that the court must examine a party's standing to challenge a search even when the standing issue is not raised by the parties). In order to contest whether a search comports with the Fourth Amendment, the defendant must have "a reasonable expectation of privacy" in the location searched. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *United States v. Talley*, 275 F.3d 560, 563 (6th Cir. 2001). A defendant challenging a search has the burden of demonstrating his or her legitimate expectation of privacy in the location. *Id.* In assessing the reasonableness of a defendant's expectation of privacy, the Court examines

> "the person's proprietary or possessory interest in the place to be searched or item to be seized[;] whether the defendant has the right to exclude others from the place in question; whether he had taken normal precautions to maintain his privacy; whether he has exhibited a subjective expectation that the area would remain free from governmental intrusion; and whether he was legitimately on the premises."

*United States v. Waller*, 426 F.3d 838, 844 (6th Cir. 2005) (quoting *United States v. King*, 227 F.3d 732, 744 (6th Cir. 2000)).

An overnight social guest "has a reasonable expectation of privacy in the place where he sleeps at night." *United States v. Allen*, 720 F. App'x 254, 257 (6th Cir. 2018) (citing *Minnesota v. Oleson*, 495 U.S. 91, 96-97 (1990)). Our appellate court affords broad Fourth Amendment

16

protections to "nearly all overnight guests, clarifying that these Fourth Amendment protections extend to those who occupy common areas in an apartment that are freely accessible to others." *Id.* Moreover, "[t]he use of a space for illegal activity does not alter these privacy expectations, so long as the person is an overnight, not business, guest." *Id.; c.f. Minnesota v. Carter*, 525 U.S. 83, 90-91 (1998) (holding defendants in another's apartment for a short time only to package cocaine had no legitimate expectation of privacy in the apartment). Accordingly, in *Allen*, the court held that the defendant had a legitimate expectation of privacy in an apartment, where he stayed for two weeks, despite his use of the location for illegal activity. 720 F. App'x at 258.

In the instant case, the Court finds that Defendant Billips has failed to carry his burden of showing that he has a legitimate expectation of privacy in 510 Gillespie Road. Defendant Billips argues that he is "similarly situated" to Defendant Bibbs [Doc. 339]. However, there is no evidence that Defendant Billips lived at the residence.

The record contains scant information on Defendant Billips's connection to 510 Gillespie Road. Investigator Headden's affidavit does not mention Defendant Billips [Doc. 222-1]. Detective Ritter's affidavit states merely that Defendant Billips "was in a front room inside the residence," when the officers entered to execute a search warrant [Doc. 222-2, p.3, ¶7(c)]. In Defendant Bibbs's interview by the Hamilton County Sheriff's Office (Bibbs's second statement on July 25, 2019), Defendant Bibbs told the officers that "Cam," his friend from Knoxville, came to the residence during the night and called him (Bibbs), asking to be let inside [Doc. 233, Exh. 9A, pp. 3-5].[8] Bibbs told the officers, "my friend want [sic] to stay down here from Knoxville, bruh. To get back, just to get back, man." [Doc. 233, Exh. 9A, p.3]. However, whether that

---

[8] The Court notes that in his statement to HCSO deputies, Defendant Bibbs denied that 510 Gillespie was his residence.

17

statement indicates Defendant Bibbs was allowing Defendant Billips to stay at his residence is unclear, because Bibbs denied that he "stayed" at the residence and told the officers that he was only there one night as the guest of a woman whom he did not know [Doc. 233, Exh. 9A, p.3].[9] At the November 20 hearing, AUSA Lewen argued, in relation to another motion [Doc. 218], that 510 Gillespie Road was a "trap house," with drug paraphernalia and other evidence of drug trafficking strewn throughout.

The Supreme Court has rejected the premise that anyone legitimately in the place searched may challenge the legality of the search. *Rakas*, 439 U.S. at 134; *Carter*, 525 U.S. at 90. "Thus, an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." *Id.*; *United States v. McNeal*, 955 F.2d 1067, 1071-74 (6th Cir. 1992) (affirming the district court's finding that the defendant, a "'casual transient visitor'" to another's apartment, lacked standing to challenge the officers' warrantless entry). In the instant case, it is unclear whether Defendant Billips was a casual visitor at the residence or if Defendant Bibbs permitted him to stay there. If the former, Defendant Billips lacks a legitimate expectation of privacy to challenge the search and his motion to join in Defendant Bibbs's suppression motion should be denied.

However, the Court finds that, at best, Defendant Billips was an overnight guest at the residence. Even considering Defendant Billips to be an overnight guest, suppression of the evidence seized from 510 Gillespie Road is not warranted. The Court finds the above analysis applies equally to Defendant Billips: The affidavit of Investigator Headden provided probable cause for the search warrant for 510 Gillespie Road. The executing officers lawfully entered the

---

[9] The Court notes that despite Defendant Bibbs's claim that he did not live at 510 Gillespie Road, he referred to the residence as "my house," when telling the officers that he awoke in the night and let Billips inside [*see* Doc. 233, Exh. 9A, p.5].

18

premises pursuant to the search warrant and observed the information providing probable cause for the second search warrant. If Defendant Billips is permitted to join in the motion to suppress, the motion [Doc. 222] should also be denied as to him.

**B. Voluntariness of Defendant Bibbs's Statement**

The Fifth Amendment protects against a defendant being "compelled in any criminal case to be a witness against himself." In light of this protection, the Supreme Court has held that law enforcement officers cannot interrogate a suspect who is in custody until they advise the suspect of his or her rights under the Fifth Amendment. *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966); *see also United States v. Salvo*, 133 F.3d 943, 948 (6th Cir.), *cert. denied*, 523 U.S. 1122 (1998) (6th Cir. 1998). "Statements elicited in noncompliance with this rule may not be admitted for certain purposes in a criminal trial." *Stansbury v. California*, 511 U.S. 318, 322 (1994); *Salvo*, 133 F.3d at 948. On the evening of July 25, 2019, Defendant Bibbs met with HCSO task force officers at the Sheriff's office.[10] An officer advised Defendant Bibbs of the *Miranda* warnings, prior to asking any questions, other than Defendant's name [Doc. 233, Exh. 9A, p.1]. Following the advice of rights, Defendant Bibbs expressly refused to sign a rights waiver form [Doc. 233, Exh. 9A, p.2]. However, Defendant Bibbs continued to talk to the officers, who questioned him for approximately eleven minutes [Doc. 233, Exh. 9A].

Defendant Bibbs asks the Court to suppress the statement he gave to HCSO officers on the evening of July 25, 2019, because he was questioned while in police custody and without voluntarily waiving his rights under the Fifth Amendment.[11] Both parties agree that the HCSO

---

[10] The parties stipulated to a video recording [Doc. 231, Exh. 9] and a transcript [Doc. 233, Exh. 9A] of the statement.

[11] As noted above, Defendant Bibbs also moved to suppress a statement that he gave in response to questions by CPD officers, while Bibbs was detained in a police car outside 510 Gillespie Road.

19

officer advised Defendant Bibbs of the *Miranda* warnings before the officers asked the Defendant any questions. Also, both parties agree that Defendant Bibbs did not sign a written *Miranda* waiver or expressly state that he was waiving his rights. However, the Government argues that the Defendant's behavior and statements following the advice of rights demonstrate that he knowingly and voluntarily waived his rights by implication. Defendant responds that his questions about the charges and expressions of concern about Billips do not constitute an implied waiver of his right not to incriminate himself. Thus, the question for the Court is two-fold, do Defendant's words and actions constitute a waiver of his *Miranda* rights and, if yes, was that waiver knowing and voluntary?

*(1) Waiver*

The obligation to administer *Miranda* warnings to suspects only arises if there has been "such a restriction on a person's freedom as to render him 'in custody.'" *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam). Here, Defendant Bibbs was questioned by HCSO officers while detained at the Sheriff's Department. The parties agree and the court finds that he was in custody. Thus, the *Miranda* warnings were required and were given.

A waiver of *Miranda* rights must be knowingly and voluntarily given, but there is no requirement that a defendant waive his or her rights in writing. *United States v. Miggins*, 302 F.3d 384, 397 (6th Cir.), *cert. denied* 537 U.S. 1130 (2002). In *Miranda,* "the Court held that an express statement can constitute a waiver, and that silence alone after such warnings cannot do so. But the

---

In its response [Doc. 231], the Government agrees that Defendant Bibbs was subject to custodial interrogation during this "first statement" and was not provided the *Miranda* warnings. The Government states that it will not seek to use the first statement made in the patrol car in its case-in-chief at trial and will only use it to impeach Defendant Bibbs, if he provides testimony at trial inconsistent with his first statement. At the November 20 hearing, the parties agreed that the first statement was no longer at issue.

Court did not hold that such an express statement is indispensable to a finding of waiver." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). A defendant's "understanding of his rights and a course of conduct indicating waiver" can constitute a waiver of rights, even in the absence of an express waiver. *Id.* The prosecution bears the burden of proving a defendant has waived his or her *Miranda* rights and, in the absence of an express waiver, that burden is heavy; however, "in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." *Id.*

Relying on *Butler*, our appellate court affirmed the state court's holding that a defendant waived his *Miranda* rights, even though he refused to sign the rights waiver form. *Davie v. Mitchell*, 547 F.3d 297, 304 (6th Cir. 2008) (finding Ohio Supreme Court's application of federal law was not objectively unreasonable), *cert. denied*, 558 U.S. 996 (2009). "Although Davie did not initial the waiver section on the form, Davie explicitly stated that he agreed to speak with the officers, and therefore effectively waived his *Miranda* rights." *Id.* at 306 (observing that defendant initiated the conversation and acknowledged that he understood his rights). Also, in *United States v. Kaufman*, the court upheld the admissibility of the defendant's statement, despite the defendant's refusal to sign a waiver form, based upon the defendant's speaking freely to the officer after the *Miranda* warnings. 92 F. App'x 253, 256 (6th Cir. 2004). The court relied on the following facts and circumstances to indicate that the defendant voluntarily waived his rights:

> (1) [the officer] advised Stewart of his *Miranda* rights orally and in writing: and (2) Stewart did not request counsel, never declined to speak or sought to terminate the interview, continued to make inculpatory statements after being reminded of his *Miranda* rights, appeared both unimpaired by any substances and cognizant of the purpose of the interview.

*Id.* at 255-56.

In the instant case, the officers brought Defendant into the interview room, asked him to be seated, and asked if he went by Demetrius [Doc. 233, Exh. 9A, p.1]. The officer told the Defendant that they wanted to talk to him, provided the *Miranda* warnings, and asked if Bibbs wanted to talk to them [Doc. 233, Exh. 9A, p.1]. The Defendant responded by asking what his charges were [Doc. 233, Exh. 9A, p.1]. When informed that there would be drug charges, the Defendant asked what the officers found [Doc. 233, Exh. 9A, p.1]. The officer responded that they would "go into that here in a second. We need to know if you want to talk" [Doc. 233, Exh. 9A, p.2]. Defendant Bibbs told the officers he wanted to know what they were talking about and to find out what they found in the house [Doc. 233, Exh. 9A, p.2]. The officer asked if the Defendant would sign a waiver form, and the Defendant replied that he would not sign anything [Doc. 233, Exh. 9A, p.2]. The officer again asked if Defendant Bibbs wanted to talk to them, and Bibbs responded that he wanted to know why the officers kicked in the door and shot Billips [Doc. 233, Exh. 9A, p.1]. Then the following exchange occurred:

> [Officer]: Hold on just a second, listen.
>
> [Bibbs]: Yeah, I'm finna talk. I'm finna, I'm finna see what goin' on. I want to know what's goin' on. Yeah. I wanna know what's goin' on, man.
>
> [Officer]: I work narcotics for the sheriff's office. He works criminal investigations for the sheriff's office.
>
> [Bibbs]: Yeah.
>
> [Officer]: You gonna listen?
>
> [Bibbs]: Yeah, yeah I'm finna to, I'm finna to see what's goin' on.
>
> [Officer]: Ok. Do you, do you –
>
> [Bibbs]: Man, come on with the questions, man. Just come on with the questions, bruh.

22

[Doc. 233, Exh. 9A, p.2]. Thereafter, the officers questioned the Defendant for approximately nine to ten minutes.

The Court finds that Defendant Bibbs's course of conduct—his words and actions following the advice of rights—constitutes a waiver of his *Miranda* rights. Although he refused to sign the waiver form, Defendant Bibbs clearly indicated that he wanted to talk to the officers: The officers attempted to confirm that Defendant Bibbs wanted to continue the interview multiple times. Defendant Bibbs responded that he was fine to talk and that he wanted to know what was going on, and he directed the officers to commence the questioning. Additionally, the Court observes that the Defendant never requested a lawyer during the eleven-minute interview [Doc. 233, Exh. 9A]. The Court finds that this course of conduct indicates that Defendant waived his rights.

*(2) Voluntariness*

Defendant Bibbs argues that he did not impliedly waive his rights because he never acknowledged that he understood the *Miranda* warnings and, instead, he merely asked for information from the officers and expressed concern about the police's shooting of Defendant Billips in the living room, while he was asleep in the back bedroom. In other words, the Defendant argues that his words and actions do not demonstrate that he knowingly and voluntarily waived his *Miranda* rights.

Before an incriminating statement is admissible, the government must prove by a preponderance of the evidence that the defendant knowingly and voluntarily waived the *Miranda* rights. *Colorado v. Connelly*, 479 U.S. 157, 169-70 (1986); *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (holding a valid waiver of the *Miranda* rights must be voluntary, knowing, and intelligent).

> A waiver is knowing if the suspect understands that he may "choose
> not to talk to law enforcement officers, to talk only with counsel

> present, or to discontinue talking at any time." *Colorado v. Spring*,
> 479 U.S. 564, 574, . . . (1987). A waiver is voluntary if the suspect's
> decision to talk is "the product of a free and deliberate choice rather
> than intimidation, coercion, or deception." *Moran*, 475 U.S. at 421,
> . . . .

*United States v. Davis*, 683 F. App'x 480, 484 (6th Cir.) (rejecting defendant's argument that drugs

prevented him from understanding and voluntarily waiving his rights), *cert. denied* 138 S. Ct. 160

(2017).

To assess whether a confession was voluntary, the Court must "examine 'the totality of the

circumstances surrounding the confession, both the characteristics of the accused and the details

of the interrogation, and determine[ ] their psychological impact on an accused's ability to resist

pressures to confess.'" *United States v. Rigsby*, 943 F.2d 631, 635 (6th Cir. 1991) (quoting *United

States v. Brown*, 557 F.2d 541, 546 (6th Cir. 1977)), *cert. denied*, 503 U.S. 908 (1992). "[C]oercive

police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the

meaning of the Due Process Clause of the Fourteenth Amendment." *Connelly*, 479 U.S. at 167.

"If the police misconduct at issue was not the 'crucial motivating factor' behind [the defendant's]

decision to confess, the confession may not be suppressed." *McCall v. Dutton*, 863 F.2d 454, 459

(6th Cir. 1988) (citing *Connelly*, 479 U.S. at 163-64), *cert. denied* 490 U.S. 1020 (1989).

In examining the details of the instant interrogation, the Court finds no evidence of coercion

on the part of the interviewing officers. The interview was conducted by two officers. The officers

never threatened Defendant Bibbs and spoke in a calm and cordial tone. The interview lasted

approximately eleven minutes. The officers repeatedly tried to assess whether the Defendant

wanted to waive his rights and talk with them. Thus, the Court finds no coercion on the part of the

interviewing officers.

The Defendant's arguments seem to suggest that the shooting of Defendant Billips upon the SWAT team's entry into the residence to execute the search warrant was coercive police conduct that influenced the voluntariness of the interview. However, even considering the shooting as a part of the totality of the circumstances surrounding the interview, the Court does not find it affected the voluntariness of the Defendant's statement. The shooting occurred around 6:17 a.m. and the interview occurred at 10:53 p.m., approximately sixteen and one-half hours later. On the record before the undersigned, there is no evidence that Defendant Bibbs, who was asleep in a back bedroom at the time of the entry, was involved in the shooting. Finally, although the Defendant mentions the shooting multiple times during the interview, the Court finds the Defendant's interest in talking with the officers appears to be to gain information on the extent of any criminal charges against him. The Court finds that the Defendant's statement was not coerced by the shooting.

Additionally, the characteristics of the Defendant also indicate that he voluntarily spoke with the officers. Although the Defendant was concerned about the shooting of Defendant Billips, he repeatedly asked the officers questions about his charges and the amount and location of drugs seized from the residence. The Defendant's questions about the search warrant and police procedures, such as booking and bond, indicate that he was familiar with criminal procedure and his rights. Finally, the Court finds that the Defendant does not appear to be under the influence of any substances and his questions and statements indicate he was aware of the purpose of the interview. Based upon the Court's review of the video recording of the interview [Exh. 9], the Court finds that Defendant Bibbs knowingly and intelligently waived his rights by proceeding to talk with the officers, following the advice of rights.

In summary, the Court finds Defendant Bibbs's course of conduct during the July 25, 2019 interview at the Sheriff's Department reveals that he knowingly and voluntarily waived his *Miranda* rights and agreed to talk with the officers. Accordingly, the Court recommends that the Defendant's Motion to Suppress Statements [Doc. 223] be denied.

## IV. CONCLUSION

After carefully considering the parties' arguments and the relevant legal authorities, the Court finds that law enforcement properly searched 510 Gillespie Road pursuant to a valid search warrant. The Court also finds that Defendant Bibbs knowingly and voluntarily waived his Fifth Amendment rights in continuing his interview with HCSO officers. Accordingly, the undersigned respectfully **RECOMMENDS** that that Defendant Bibbs's Motion to Suppress Evidence Obtained from the Searches of 510 Gillespie Road [Doc. 222] and Motion to Suppress Statements [Doc. 223] be **DENIED**. Assuming that Defendant Billips's can properly join in Defendant Bibbs's Motion to Suppress Evidence Obtained from the Searches of 510 Gillespie Road [Doc. 222], the Court also recommends that the motion be **DENIED** as to Defendant Billips.[12]

Respectfully submitted,

Debra C. Poplin
United States Magistrate Judge

---

[12] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

26